# BMW Financial Services NA, LLC
## Motor Vehicle Lease Agreement (Closed End)

### 1. PARTIES

**Lessor (Center) Name and Address**
BMW of The Woodlands
17830 Interstate 45 S
The Woodlands TX 77384

**Lessee and Co-Lessee Name and Address**
Benjamin Chiu Jr.
27411 Whispering Maple Way
Spring TX 77386

**Vehicle Garaging Address** (if Different)

**Billing Address** (if Different)

### 2. Agreement to Lease.
This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above. Unless otherwise specified, "I", "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee. "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☒ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

### 3. Date of Lease, Lease Term and Scheduled Maturity Date.
This Lease is entered into on 12/19/2017 for the scheduled Lease Term of 24 months with a Scheduled Maturity Date of 12/19/2019.

### 4. VEHICLE DESCRIPTIONS

**A. Leased Vehicle:** ☒ New  ☐ Demo  ☐ Used
| Model Year | Make & Model | VIN | Odometer | Primary Use |
|---|---|---|---|---|
| 2018 | BMW 740i | WBA7E2C56JG741973 | 285 | ☒ Personal, Family or Household  ☐ Business, Commercial or Agricultural |

*If Personal Use is checked above, this is Consumer Paper.

☐ Telephone  ☐ CD Player  ☐ _____ (specify)  ☐ _____ (specify)  ☐ _____ (specify)

**B. Trade-In**
| Model Year | Make | Model | Agreed Upon Value | Prior Credit or Lease Balance | Net Trade-In Value |
|---|---|---|---|---|---|
| 2018 | BMW | 5-SERIES | 65,000.00 | 64,514.54 | 485.46 |

### 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY
(Itemized in Section 9)
$ 3,164.62

### 6. MONTHLY PAYMENTS
My first monthly payment of $ 679.16 is due on 12/19/2017 followed by 23 payments of $ 679.16 due on the 19 day of each month. The total of my monthly payments is $ 16,299.84.

### 7. OTHER CHARGES
(Not part of my Monthly Payments)
A. Disposition Fee (if I do not purchase the Vehicle) $ 350.00
B. _____ N/A _____ $ 0.00
TOTAL $ 350.00

### 8. TOTAL OF PAYMENTS
(The amount I will have paid by the end of the Lease Term)
$ 19,135.30

## 9. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

A. Amount Due at Lease Signing or Delivery
1. Capitalized Cost Reduction          $     2,485.46
2. First Monthly Payment               $       679.16
3. Refundable Security Deposit         $         0.00
4. Initial Title Fees                  $         0.00
5. Initial Registration Fees           $         0.00
6. Initial License Fees                $         0.00
7. Sales/Use Tax                       $         0.00
8. Acquisition Fee (if not capitalized) $        0.00
9. Sales Tax on Capitalized Cost Reduction $     0.00
10. GA New Vehicle Arb Fee             $         0.00
11. _____            $         0.00
12. _____            $         0.00
13. _____            $         0.00
14. _____            $         0.00
TOTAL                                  $     3,164.62

B. How the Amount Due at Lease Signing or Delivery Will Be Paid
1. Net Trade-In Allowance              $       485.46
2. Rebates and Noncash Credits         $     2,000.00
3. Amount to be Paid in Cash           $       679.16
TOTAL                                  $     3,164.62

## 10. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 70,742.02 ) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (see Section 13 for an itemization of this amount).   $  72,311.83

B. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost.   - $  2,485.46

C. **Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly Payment.   = $  69,826.37

D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment.   - $  58,197.05

E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.   = $  11,629.32

F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts.   + $  4,670.52

G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge.   = $  16,299.84

H. **Lease Payments.** The number of payments in my Lease.   ÷  24

I. **Base Monthly Payment.**   = $  679.16

J. **Monthly Sales/Use Tax.**   + $  0.00

K. _____   + $  0.00

L. **Total Monthly Payment.**   = $  679.16

---

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**11. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of ___20,285___ miles, at the rate of ___30___ cents per mile.

**12. Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle ("as is") at the Scheduled Termination of the Lease for its Residual Value of $___58,197.05___. The purchase option price does not include official fees, such as those for taxes, title, registration and license/tags. See Section 27 for more information.

**Other Important Terms.** See all pages of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**IF I DO NOT MEET MY OBLIGATIONS UNDER THIS LEASE, YOU MAY REPOSSESS THE VEHICLE.**

## 13. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | | |
|---|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ 70,742.02 | L. Other Doc Prep Fee | $ | 150.00 |
| B. Initial Title, License & Registration Fees | $ 192.00 | M. Other T&W HI PERF PLUS 2 YR | $ | 706.00 |
| C. Sales/Use Tax | $ 250.81 | N. Other WINDSHIELD CL2 2 YR | $ | 271.00 |
| D. Federal Luxury Tax | $ 0.00 | O. Other _____ | $ | 0.00 |
| E. Sales Tax on Capitalized Cost Reduction | $ 0.00 | P. Other _____ | $ | 0.00 |
| F. Maintenance Agreement | $ 0.00 | Q. Other _____ | $ | 0.00 |
| G. Mechanical Breakdown Protection | $ 0.00 | R. Other _____ | $ | 0.00 |
| H. Extended Warranty | $ 0.00 | S. Other _____ | $ | 0.00 |
| I. Prior Credit or Lease Balance* | $ 0.00 | T. Other _____ | $ | 0.00 |
| J. GA New Vehicle Arb Fee | $ 0.00 | U. Other _____ | $ | 0.00 |
| K. Acquisition Fee | $ 0.00 | TOTAL | $ | 72,311.83 |

*Leave blank unless Lessor has paid prior credit or lease balance.

## 14. ESTIMATED OFFICIAL FEES AND TAXES

$___942.81___ This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term including amounts you may invoice me for official fees and taxes that are assessed for the Lease Term but billed to you after the Lease Term, whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed. The actual total of Official Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change.

### 15. OPTIONAL PRODUCTS AND SERVICES

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box, fill in all necessary information, initial below and I am accepted by the provider. Because these products and or services are not provided by the Lessor, I understand that I must pursue all related matters, including refunds, through the listed Provider. By initialing below, I agree that I have received and read a notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Center).

☐ Maintenance Agreement _____ __0__ $__0.00__ _____
Provider                    Term (Months)   Charge   Lessee/Co-Lessee Initials

☐ Mechanical Breakdown Protection _____ __0__ $__0.00__ _____
Provider                    Term (Months)   Charge   Lessee/Co-Lessee Initials

☐ _____ _____ __0__ $__0.00__ _____
Provider                    Term (Months)   Charge   Lessee/Co-Lessee Initials

**Mileage Allowance/Refund.**

__20,285__ I agree to this Mileage Allowance for the term of this Lease. My Monthly Payment and Residual Value for this Lease have been calculated, in part, by using this Mileage Allowance.

☐ If this box is checked, I have elected a high Mileage Allowance. I may receive a refund of __25__ cents per unused mile for the unused miles between _____ __0__ miles and _____ __0__ miles, unless (a) the Vehicle is destroyed or stolen, (b) I default or terminate this Lease early, (c) I purchase the Vehicle, or (d) the refund is less than $1. Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

### 16. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:
☐ Remainder of the standard manufacturer's new vehicle warranty if the Vehicle is not a new vehicle.
☐ _____

UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

### 17. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 20. I affirm that such insurance is in force on the date of this Lease. I authorize Lessor and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the leased Vehicle.

__ENCOMPASS__                        Policy No.: [redacted]    Coverage Verified (Center Employee's Initials): A
Insurance Company

__COMMUNITY INS ASSOC.__             Address: [redacted]
Agent Name

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com; or faxed to 888-725-8456.

### MY OBLIGATIONS DURING THIS LEASE

**18. Vehicle Use.** I agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law or the terms of my insurance policy or this Lease; (b) to transport goods or people for hire, lease or rental to others; (c) outside the state where it was first titled for more than 30 days without your prior written consent; (d) outside the United States, except for less than 30 days in Canada; (e) allow an uninsured person to operate the Vehicle at any time, or allow any third party, other than my spouse, to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way unless I first get your written consent.

**19. Vehicle Maintenance, Service, Repairs, and Reconditioning.** I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine BMW manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing my insurance agreement, damage repair estimate, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 32 below. You may inspect the Vehicle at any reasonable time.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

I acknowledge that I am not an additional insured under any insurance policy you choose to maintain on the Vehicle for collision, upset, or similar accident or physical damage.

**20. Required Insurance.** During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000; (b) property damage liability for not less than $50,000; (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000; (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at

least 30 days advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or provide insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. If valid automobile liability insurance or self insurance is available on any basis for me, additional authorized driver(s) or any other driver and such insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by any passenger while riding in or on or getting in or out of the Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/ Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP and/or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/UIM limits in excess of the minimum limits required by law.

**21. Registration, Titling, and Taxes.** I agree to pay registration, title, license, inspection fees and other official fees and taxes in connection with the Vehicle when due. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 21 are in addition to any remedies you may have pursuant to Section 23.

If I move to another location during the Lease Term or it becomes necessary for you to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**FOR VIRGINIA RESIDENTS:**
**I AM RESPONSIBLE FOR THE PAYMENT OF ALL TAXES DUE ON THE VEHICLE. THESE TAXES INCLUDE WITHOUT LIMITATION: (1) ANY APPLICABLE PERSONAL PROPERTY TAXES ON THE VEHICLE OWED TO THE CITY, COUNTY OR OTHER LOCAL GOVERNMENT IN WHICH I MAINTAIN THE VEHICLE; AND (2) ANY APPLICABLE SALES AND USE TAXES.**

**22. Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets.** If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of **$30 or 5%** of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a **$30** service charge per item when I am billed. However, if I enter into this lease in **AR, AZ, MI, MO, NC, NV, ND,** or **OR**, I agree to pay **$25** per item. Or, if I enter into this lease in **ID** or **PA**, I agree to pay **$20** per item. Or, if I enter into this lease in **SD**, I agree to pay **$40** per item.

If you receive notice of any third-party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third-party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third-party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the third-party charges then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and all costs you incur associated with my failure to pay such fines, charges or traffic tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 22 are in addition to any remedies you may have pursuant to Section 23.

**23. Default and Remedies.** I will be in default under this Lease if:
(a) I fail to make a Monthly Payment when due;
(b) I fail to maintain the required insurance;
(c) I fail to return the Vehicle at the end of the Lease term;
(d) I fail to keep any of my promises under this Lease;
(e) I abandon the Vehicle;
(f) I or a guarantor die(s), are declared incompetent or become(s) insolvent, a bankruptcy petition is filed by or against me or a guarantor or I or a guarantor dissolve(s) or cease active business affairs;
(g) Any information in my credit application or a guarantor's credit application is false or misleading.

If I am in default, you may do any or all of the following:
(i) Terminate this Lease and my rights to possess and use the Vehicle;
(ii) Take possession of the Vehicle by any method permitted by law;
(iii) Pursue any other remedy permitted by law;
(iv) Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days;
(v) Require that I pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excessive Wear and Use and Excessive Mileage charges; plus (3) the amount by which the Adjusted Lease Balance (explained in Section 30) exceeds the Realized Value of the Vehicle (Section 31); plus (4) all of your expenses for taking these actions, including, but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle; plus (5) all fees and costs of collections, including reasonable attorneys' fees, court costs, interest, and other related expenses for all losses you incur in connection with my default of this Lease. Furthermore, if I do not pay these amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay;
(vi) If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.
(vii) The Vehicle is subject to or threatened by seizure, confiscation, levy or other involuntary transfer by governmental, administrative or legal process.

**24. Vehicle Loss or Damage.** I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. In that event, you reserve the right to terminate this Lease and my liability will either be: (a) calculated under Section 25 below, if I am in compliance with my insurance obligations; or (b) calculated under Section 23 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 19 above at my expense.

**25. "Gap Amount" Waiver.** If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company. However, I will be obligated to pay you: (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss, I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 23.

**26. Power of Attorney.** I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under this Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with same.

**27. Purchase Option.** I have an option to purchase the Vehicle AS-IS, WHERE-IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.D). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 30). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees or taxes, unpaid Monthly Payments or late charges.

**28. Vehicle Return.** If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excessive wear and use and/or excessive mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

**29. Scheduled Termination of the Lease.** Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you: (a) a **$350** Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and Excessive Wear and Use charges (Sections 11 and 32), plus (d) any official fees or taxes assessed or billed in connection with this Lease.

**30. Early Termination of the Lease.** I may terminate this Lease at any time by purchasing the Vehicle (Section 27) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

**Option A.** I agree to pay the sum of : (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excessive Wear and Use and Mileage Charges; plus (5) a **$350** Disposition Fee.

**Option B.** I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excessive Wear and Use and Excessive Mileage charges; plus (3) a **$350** Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 31). However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option A, you will waive the difference and my liability will be capped at Option A.

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed and/or billed after the Lease terminates.

The "Adjusted Lease Balance" is determined at any given time by subtracting the Base Monthly Payments scheduled to be paid through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge earned through the early termination date. The Rent Charge is calculated according to the "constant yield method." Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due dates.

**31. Realized Value of the Vehicle.** For the purpose of calculating my Early Termination liability (Section 30), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as set forth in Section 24 above, and I am in compliance with my insurance obligations, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain, at my own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal within 10 days after the Vehicle is returned to you, the appraisal will be the final and binding Realized Value.

**32. Excessive Wear and Use.** I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to:
(a) inoperative electrical or mechanical parts;
(b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c) non-functioning, scratched, cracked, pitted or broken glass or lights;
(d) missing equipment, parts, accessories or adornments;
(e) torn, damaged, burned, or stained interior;
(f) repair of any damage that makes the Vehicle unlawful or unsafe to drive;
(g) damage due to installation or removal of non-manufacturer, after-market or replacement parts;
(h) damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 19; or
(i) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quantity or quality as those delivered with the Vehicle.

If I fail to pay any excessive wear and use, excessive mileage or other lease end charges within thirty days of the due date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted if less, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease end charges, including but not limited to excess wear and use and excess mileage fees.



**33. Indemnification.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle, including claims made under the strict liability doctrine.

**34. Refundable Security Deposit.** You may use some or all of my Security Deposit to pay any amount I owe under this Lease at the end of my Lease Term or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under this Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

**35. Assignment.** You may assign your interests under this Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

**36. Notices.** All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

**37. Other Terms.** <u>Waiver</u>. You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. <u>Severability</u>. Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. <u>Joint Liability</u>. If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. <u>Choice of Law</u>. Except as may otherwise be provided by law, this Lease will be subject to the federal law and substantive laws of the state where I sign it without regard to principles of choice law or conflict law. In the event that both parties agree not to arbitrate in accordance with <u>Section 38</u> below, any dispute shall be brought in a court located in the state of Lessor's place of business. <u>Entire Agreement</u>. This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. <u>Maintaining Payments</u>. I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. <u>Lessee's Warranties</u>. I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in <u>Section 4.B</u>, I agree to pay you the excess amount upon demand. <u>Personal Property</u>. Lessor shall not be responsible at any time for any personal property in the Vehicle. <u>Escheatment</u>. If for any reason you need to escheat any of my funds to an unclaimed funds department, you may retain such fee as is allowable per state law.

**38. ARBITRATION CLAUSE**

**PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

"Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, the lease, purchase or condition of the Vehicle, this Lease, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Lease as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Claim" also does not include the exercise of any self-help remedies; any individual action in court limited to preventing another party from exercising a self-help remedy if the action does not involve a request for damages or any other monetary relief of any kind; or any action for replevin of the Vehicle. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver.** Notwithstanding any other provision of this Lease or Arbitration Clause, if either you or I elect to arbitrate a Claim, neither you nor I will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class of lessees including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency.) The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, notwithstanding any other provision of this Contract, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

If you or I choose to have a Claim decided by arbitration, the Claim will be arbitrated by a single arbitrator. The party commencing arbitration may choose the American Arbitration Association ("AAA"), 120 Broadway, New York, NY 10271, www.adr.org, 1-800-778-7879 or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, 1-800-352-5267 to administer the arbitration. The rules and forms of the AAA and JAMS may be obtained on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, or we mutually agree not to utilize the AAA and JAMS for whatever reason, we may agree upon another arbitration administrator or, if we are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Lease (including any other arbitration provision relating to this Lease) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting any Claim that is subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court or by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000: (a) you will pay any and all fees and costs of the arbitration administrator and/or the arbitrator if I make a written request for you to pay such fees; and (b) you will pay my reasonable attorneys and expert witness fees and costs if and to the extent I prevail in the arbitration in an amount as determined by the arbitrator. Except as provided above, we shall each pay such fees and costs of the arbitration administrator and/or the arbitrator as provided by the rules of the arbitration administrator, including, if applicable, the arbitration administrator's rules or fee and cost allocations for consumer-related arbitrations. Except as provided above, you and I shall each be responsible for our own attorneys' and expert witness fees, unless

such fees are awarded in the arbitration by the arbitrator under applicable state or federal law.

The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA. If the amount of the Claim exceeds $100,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $100,000, however, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The appealing party shall be responsible for the filing fee and other arbitration costs for the appeal panel, which fee and costs may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self-help remedies, such as repossession. Neither the exercise of any self-help remedies nor any individual action in court by one party limited solely to preventing the other party from using a self-help remedy and without any claim for damages or any other monetary or equitable relief is subject to arbitration. Neither you nor I waive the right to arbitrate by using self-help remedies.

This Arbitration Clause shall survive any termination, payoff, or transfer of this Lease and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. This Lease involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the FAA and not by any state law concerning arbitration. However, the governing law as to the substantive issues concerning this Lease and the Vehicle shall be the law of the state in which this Lease was executed and applicable federal law.

Notwithstanding any other provision for notice contained in this Lease, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Lessor, I agree that notice of my Claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my Claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my Claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my Claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my Claim at the addresses indicated herein.



**Electronic Contracting and Signature Acknowledgment.** I agree that (i) this Contract is an electronic contract executed by me using my electronic signature, (ii) my electronic signature signifies my intent to enter into this Contract and that this Contract be legally valid and enforceable in accordance with its terms to the same extent as if I had executed this Contract using my handwritten signature and (iii) the authoritative copy of this Contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by you for the storage of Authoritative Copies of electronic records, which shall be deemed held by you in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted into a paper copy which is marked by you as the original (the "Paper Contract"), then I acknowledge and agree that (1) my signing of this Contract with my electronic signature also constitutes issuance and delivery of such Paper Contract, (2) my electronic signature associated with this Contract, when affixed to the Paper Contract, constitutes my legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, my obligations will be evidenced by the Paper Contract alone.

## 39. LESSEE NOTICES AND SIGNATURES

By signing below, I acknowledge that:
- This Lease is completely filled out;
- I have no ownership rights in the Vehicle unless and until I exercise my option to purchase the Vehicle;
- I have read all pages of this Lease carefully and agree to all of its terms; and
- I have received a completely filled in copy of this Lease.
- This Lease may only be amended in writing signed by you and me.

X _____
Lessee
Benjamin Chiu Jr.
By (Print Name & Title if Corporation)

X _____
Lessee
By (Print Name & Title if Corporation)

## 40. GUARANTY

I jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against me without first proceeding against the Lessee. My liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to notices of every kind, including rights to demand and presentment. I agree to pay all expenses (including reasonable attorney's fees and legal expenses) you incur if you have to enforce this Guaranty. By signing this Lease, I have read all pages of this Lease carefully and agree to all of its terms.

Guarantor's Signature: X _____

Name _____

Address _____

Guarantor's Signature: X _____

Name _____

Address _____

## 41. LESSOR'S ACCEPTANCE AND ASSIGNMENT

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Center Agreement between Lessor and BMW FS.

Lessor Name  BMW of The Woodlands

Signature of Authorized Representative _____

Page 8 of 8

# BMW Financial Services - Lease Transfer Agreement - (Transferee)

## Transferor (Original Lessee)

**Lessee Name & Address**
Benjamin Chiu
27411 Whispering Maple Way
Spring, TX 77386-3312

**Co-Lessor Name and Address**

**Vehicle Garaging Address (If Different)**

## Transferee (New Lessee)

**Lessee Name & Address**
Ron Vigdor
3900 Ne 6th Dr
Boca Raton, FL 33431-6118

**Co-Lessee Name & Address**

**Vehicle Garaging Address (If Different)**

## Lease Agreement Description

| Account Number | Lease Date | Original Payment Terms | Payment Due Day | Scheduled Maturity Date |
|---|---|---|---|---|
| [redacted] | 12/19/2017 | 24 months at $679.16 | 19 | 12/19/2019 |

**Mileage Agreement**
I may be charged for mileage in excess of total miles over the scheduled Lease Term of 20,000 miles, at the rate of $0.30 cents per mile.

## Vehicle Description

| Year | Make | Model | Vin | Intended use by Transferee |
|---|---|---|---|---|
| 2018 | BMW | 740i | WBA7E2C56JG741973 | [X] Personal, Family, or Household<br>[ ] Commercial or Agricultural |

## Transfer of Interest

FOR AND IN CONSIDERATION OF the transfer of the above described vehicle I understand and accept all the rights, interest and obligations of the Transferor as set forth in the Lease, including but not limited to, making payments as they become due and maintaining the required insurance coverage as set forth in the Lease. I and the Transferor have resolved all matters concerning the security deposit, excess wear and tear charges, disposition fee and all like matters and I understand that my first payment is in the next scheduled payment immediately following my receipt of confirmation from BMWFS that the assumption is complete. Said confirmation shall be called the "Confirmation/Registration Package."

This agreement may be executed in multiple counterparts, each of which is deemed to be and shall be construed as an original, and all of which shall constitute and be construed as a single agreement.

If the transferor purchased any protection plans or insurance, for example Excess Wear and Tear Insurance, Tire and Wheel, etc, as part of the original lease agreement these products may be transferable with the lease. The transferor will need to contact the third party administrator of the product to request the transfer to you allowing you to have the benefit of the product. Please make sure you read all of your documents, as third party providers have different requirements to process any claim you may submit at the end of the lease. Contact the third party vendor for any questions.

Lessee: _[signature]_    Date: 11/19/2018
Ron Vigdor

**Disclaimer: Making any alterations to this Lease Transfer Agreement will void this agreement in its entirety.**

FOR INTERNAL USE ONLY
We hereby consent to the transfer: BMW Financial Services NA, LLC

By: _Cynthia Heidt_    Date: November 15, 2018

Page 1 of 1

Upon sale of this vehicle the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION

FINANCIAL SERVICES VEHICLE
TRUST (LESSOR)
5550 BRITTON PKWY
HILLIARD, OH 43026-7456

▼ DETACH HERE ▼

# TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES



138645652

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| WBA7E2C56JG741973 | 2018 | BMW | 4D |

| TITLE/DOCUMENT NUMBER | DATE TITLE ISSUED |
|---|---|
| 17035043121140626 | 01/31/2018 |

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| 740 | | 4400 | |

PREVIOUS OWNER: BMW OF THE WOODLANDS WOODLANDS TX

ODOMETER READING: 285

OWNER:
FINANCIAL SERVICES VEHICLE
TRUST (LESSOR)
5550 BRITTON PARKWAY
HILLIARD, OH 43026-7456

REMARK(S): ACTUAL MILEAGE

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN        1ST LIENHOLDER
NONE

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN        2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN        3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

SIGNATURE _____ DATE

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S)

SIGNATURE _____ DATE

SIGNATURE _____ DATE

FORM 30-C REV 05/20 6        DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION OR MUTILATION

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation
Print Date: May 11, 2020

Customer: Vigdor, Ron

File No.:

Vehicle Description: 2018 BMW 7 Series Sedan 4D 740I
VIN: WBA7E2C56JG741973

**Base Values**

Retail: $ 40950.00          Wholesale/Trade-in: $ 36700.00

**Optional Equipment/Adjustments**

Estimated Miles    37500        $    0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

Retail: $ 40950.00          Retail/Wholesale Average: $ 38825.00

Reference  05/2020 Southeastern

Acct #:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

RON VIGDOR

CASE NO.: 20-12751-MAM
CHAPTER: 13

DEBTOR.
_____/

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM THE STAY

STATE OF OHIO            )
                         )
COUNTY OF FRANKLIN       )

      Cordell Krauss, being duly sworn, deposes and says:

1. I am employed as a Section Manager by BMW Financial Services NA, LLC service provider for Financial Services Vehicle Trust ("Movant"), and declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

2. I have authority to make this affidavit. Further, I have personally reviewed the records of Movant, and make the statements herein based upon personal knowledge obtained therein.

3. The information hereinafter given is contained in the original books and records maintained in the office of Movant.

4. The amount of the indebtedness and the nature and extent of default set forth in the Motion for Relief From the Automatic Stay (the "Motion") is information derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, the records were kept in the course of the regularly conducted activity and were made by the regularly conducted activity as a regular practice.

5. I certify that all of the documents attached to the Motion as exhibits are true and accurate copies of the original documents.

6. On November 9, 2018, Debtor, Ron Vigdor, executed a Lease Transfer Agreement that transferred the Lease Agreement dated December 19, 2017 with regard to the following personal property: 2018 BMW 7 Series Sedan 4D 740I; VIN: WBA7E2C56JG741973.

7. The Lease is in default.

8. As of May 08, 2020, the total amount of the debt owed to Creditor is $47,991.46.

FURTHER AFFIANT SAYETH NAUGHT

Signature:

Name Typed and Printed:
Cordell Krauss

Title: Section Manager

Company:
Financial Services Vehicle Trust

The foregoing instrument was sworn to and subscribed before me this 4 day of June, 2020, by Cordell Krauss who is personally known to me or has produced _____ as identification and who did take an oath.

NOTARY PUBLIC
My Commission Expires:



GAIL STIVERSON
NOTARY PUBLIC STATE OF OHIO
MY COMMISSION EXPIRES 1/20/2021

**RON VIGDOR**
**Payment History**

| Date Received | Total Payment | Principal | Interest | Lender Note |
|---:|---:|---:|---:|---|
| 1/27/2020 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 1/16/2020 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 12/12/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 10/15/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 9/16/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 9/3/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 7/31/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 7/8/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 5/31/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 4/23/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 3/21/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 2/12/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 1/17/2019 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 12/27/2018 | 726.70 | 0.00 | 0.00 | Lease Payment |
| 11/30/2018 | 724.52 | 0.00 | 0.00 | Lease Payment |
| 10/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 9/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 8/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 7/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 6/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 5/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 4/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 3/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 3/16/2018 | 2.18 | 2.18 | 0.00 | Lease Payment |
| 2/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 1/19/2018 | 679.16 | 679.16 | 0.00 | Lease Payment |
| 12/26/2017 | 679.16 | 679.16 | 0.00 | Lease Payment |